# NO. 23-12038-H

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

**RODRICK M. HAMILTON,**

*Petitioner/Appellant,*

**v.**

**UNITED STATES, et al.,**

*Respondents/Appellees.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**INITIAL BRIEF OF APPELLANT RODRICK M. HAMILTON**

**DAVID A. HOWARD, P.A.
Counsel For Rodrick Hamilton
25 S.E. 2nd  Avenue, Suite 1105
Miami, Florida 33131
Telephone No. (786) 360-6056**

# CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

*United States v. Rodrick M. Hamilton*
Case No. 23-12038-H

In compliance with Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1(a)(3) and 26.1-3, Appellant, RODRICK M. HAMILTON, files this Certificate of Interested Persons and Corporate Disclosure Statement, listing the parties and entities Appellant believes to have an interest in this appeal.

Alexander, Untarius Demont

Banker, Joshua

Becerra, Hon. Jacqueline

Bhat, Kiran Narayan

Butland, Shane R.

C.C.

Cohen, Jacob Alain

Cooke, Hon. Marcia G.

Fajardo Orshan, Ariana

Fleischer Louis, Hon. Lauren

Goodman, Adam Keith

Grab-a-Snack

**C1 of 2**

Graham, Hon. Donald L.

Grossnoff, Nicole

Hamilton, Rodrick Maurice

Howard, David A.

Hyman, Mitchell Evan

Irvin, Hillary

Lapointe, Markenzy

Matzkin, Daniel

McAliley, Hon. Chris M.

Noto, Kenneth

O'Sullivan, Hon. John J.

Smith, Hon. Rodney

Counsel certifies that no publicly traded company or corporation has an interest in the outcome of this case or appeal.

**C2 of 2**

iii

## STATEMENT REGARDING ORAL ARGUMENT

The defendant respectfully submits that oral argument is necessary to the just resolution of this appeal and will significantly enhance the decision-making process.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .....................................................C1

STATEMENT REGARDING ORAL ARGUMENT ......................................... iv

TABLE OF CITATIONS ...................................................................... vii

STATEMENT OF JURISDICTION..........................................................x

STATEMENT OF THE ISSUES............................................................ 1

STATEMENT OF THE CASE.................................................................2

    Course of Proceedings and Disposition in the District Court ......................2

    Statement of Facts..........................................................................3

    Standard of Review ........................................................................9

SUMMARY OF THE ARGUMENT ...................................................10

ARGUMENTS AND CITATIONS OF AUTHORITY

    **I.**    THE DISTRICT COURT COMMITTED REVERSIBLE ERROR IN INSTRUCTING THE JURY ON MR. HAMILTON'S CONSCIOUSNESS OF GUILT BASED ON HIS ALLEGED FLIGHT FOLLOWING THE ROBBERY ..........12

    **II.**    MR. HAMILTON'S CONVICTIONS SHOULD BE REVERSED BASED ON THE PROSECUTOR'S IMPERMISSIBLE COMMENTS ON HIS SILENCE, AND BURDEN SHIFTING REMARKS MADE DURING CLOSING ARGUMENT ................................................15

    **III.**    THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING MR. HAMILTON'S MOTION FOR NEW TRIAL OR ALTERNATIVELY FAILING TO CONDUCT AN INQUIRY OF A JUROR WHO POST VERDICT NOTIFIED THE COURT THAT HE HAD MISUNDERSTOOD THE

COURT'S INSTRUCTIONS AND BELIEVED MR. HAMILTON WAS NOT GUILTY ..................................................18

**IV.**   THE DISTRICT COURT'S 170-MONTH SENTENCE OF IMPRISONMENT IMPOSED ON MR. HAMILTON MUST BE VACATED WHERE: (A) THE TRIAL JUDGE FAILED TO PROVIDE THE REQUIRED NOTICE PURSUANT TO RULE 32(H) PRIOR TO IMPOSING A SENTENCE UPWARDLY DEPARTING FROM THE CALCULATED GUIDELINES RANGE; AND (B) THE 170 MONTHS SENTENCE WAS NOT AUTHORIZED AS A DEPARTURE OR WAS SUBSTANTIVELY UNREASONABLE ...........................21

CONCLUSION .....................................................................................25

CERTIFICATE OF COMPLIANCE......................................................26

CERTIFICATE OF SERVICE .............................................................26

# TABLE OF CITATIONS

## CASES:

*Alberty v. United States*
    162 U.S. 499, 511 (1896) ....................................................................13

*Apodaca v. Oregon*
    406 U.S. 404 (1972) .........................................................................20

*Duncan v. Stynchcombe*
    704 F. 2d 1213, 1216 (11th Cir. 1983) ..............................................18

*Griffin v. United States*
    380 U.S. 609, 612 (1965) ................................................................16

*In re Winship*, 397 U.S. 358, 364 (1970) ..............................................17

Irizarry v. United
    553 U.S. 708, 714 .............................................................................22

*Johnson v. Louisiana*
    406 U.S. 356 (1972) .........................................................................20

*Pena-Rodriguez v. Colorado*
    580 U.S. 206 (2016) .........................................................................19

*Ramos v. Louisiana*
    ___U.S.___, 140 S.Ct. 1390 (2020) .......................................... 19, 20

*Sandstrom v. Montana*
    442 U.S. 510 (1979) .........................................................................17

*Thompson v. Utah*
    170 U.S. 343, 351 (1898) ................................................................19

*United States v. Bernal-Benitez*
    594 F. 3d 1303, 1315 (11th Cir. 2010) ..............................................18

*United States v. Bright*
  630 F. 2d 804, 825 (5th Cir. 1980) ........................................................16

*United States v. Guerra*
  293 F.3d 1279, 1290 (11th Cir. 2002) ....................................................9

*United States v. Irey*
  612 F.3d 1160, 1188 (11th Cir. 2010)(en banc) ....................................9

*United States v. Johnson*
  277 Fed.Appx. 890, 895 (11th Cir. 2008) ..............................................9

*United States v. LeQuire*
  943 F. 2d 1554, 1565 (11th Cir. 1991) ..................................................16

*United States v. Matire*
  898 F.3d 1151, 1159 (11th Cir. 2018) ....................................................9

*United States v. Myers*
  550 F. 2d 1036, 1049 (5th Cir. 1977) ....................................................14

*United States v. Noriega*
  117 F.3d 1206, 1218 (11th Cir. 1997). ..................................................9

*United States v. Perez*
  806 Fed. Appx. 725,728 (11th Cir. 2020) ..............................................22

*United States v. Plasencia*
  886 F.3d 1336, 1344-145 (11th Cir. 2018)............................................22

*United States v. Robinson*
  154 U.S. App.D.C. 265, 475 F.2d 376, 384 (1973) ..............................14

*United States v. Simon*
  964 F. 2d 1082, 1087 (11th Cir. 1992) ..................................................18

*United States v. Stuart Caballero*
   686 F. 2d 890, 892 (11th Cir. 1982) ....................................................16

*United States v. Taylor*
   142 S.Ct. 2015 (2022) ..........................................................................3

*United States v. Venske,*
   296 F.3d 1284 (11th Cir. 2002) ...........................................................9

*Wong Sun v. United States*
   371 U.S. 471, 483 n.10 (1963) ...........................................................13

**Statutes**

18 U.S.C. § 1951(a) ..................................................................................2

18 U.S.C. § 3553(a) ................................................................................22

18 U.S.C. § 3553(b) ...............................................................................22

18 U.S.C. § 924 (c)(1)(A)(ii) ...................................................................2

**Other Authorities**

E. Cleary, McCormick on Evidence s 271, p. 655 (rev. ed. 1972) .........................14

U.S.S.G. § 4A1.3(a)(1) .................................................................. 22, 23

**Rules**

Fed.R.Cr.P 29 ........................................................................................2,

Fed.R.Cr.P. 32(h) ......................................................................... 11, 21

Fed.R.Evid. 606(b) ................................................................................19

**Constitutional Provisions**

Fifth Amendment ....................................................................... 15, 16, 17

Sixth Amendment .................................................................................20

## STATEMENT OF JURISDICTION

The district court had jurisdiction of this case pursuant to 18 U.S.C. § 3231, because the defendant was charged with offenses against the laws of the United States. The court of appeals has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, which gives the courts of appeals jurisdiction over all final decisions of the district courts of the United States, and 18 U.S.C. § 3742(a), which authorizes the defendant's appeal of his sentence. The notice of appeal was timely filed on June 16, 2023, from the final judgment and commitment order entered on June 2, 2023, that disposes of all claims between the parties to this cause.

# STATEMENT OF THE ISSUES

## ISSUE I

THE DISTRICT COURT COMMITTED REVERSIBLE ERROR IN INSTRUCTING THE JURY ON MR. HAMILTON'S CONSCIOUSNESS OF GUILT BASED ON HIS ALLEGED FLIGHT FOLLOWING THE ROBBERY

## ISSUE II

MR. HAMILTON'S CONVICTIONS SHOULD BE REVERSED BASED ON THE PROSECUTOR'S IMPERMISSIBLE COMMENTS ON HIS SILENCE, AND BURDEN SHIFTING REMARKS MADE DURING CLOSING ARGUMENT

## ISSUE III

THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING MR. HAMILTON'S MOTION FOR NEW TRIAL OR ALTERNATIVELY FAILING TO CONDUCT AN INQUIRY OF A JUROR WHO POST VERDICT NOTIFIED THE COURT THAT HE HAD MISUNDERSTOOD THE COURT'S INSTRUCTIONS AND BELIEVED MR. HAMILTON WAS NOT GUILTY

## ISSUE IV

THE DISTRICT COURT'S 170-MONTH SENTENCE OF IMPRISONMENT IMPOSED ON MR. HAMILTON MUST BE VACATED WHERE: (A) THE TRIAL JUDGE FAILED TO PROVIDE THE REQUIRED NOTICE PURSUANT TO RULE 32(H) PRIOR TO IMPOSING A SENTENCE UPWARDLY DEPARTING FROM THE CALCULATED GUIDELINES RANGE; AND (B) THE 170 MONTHS SENTENCE WAS NOT AUTHORIZED AS A DEPARTURE OR WAS SUBSTANTIVELY UNREASONABLE

## STATEMENT OF THE CASE

### Course of Proceedings and Disposition in the District Court

On November 17, 2020 a federal grand jury sitting in the Southern District of Florida, returned a three count indictment charging the Appellant, Rodrick Hamilton, and a co-defendant, Untarius Alexander with the following offenses: Count I conspiracy to commit Hobbs Act Robbery in violation of 18 U.S.C. 1951(a); Count II Attempted Hobbs Act Robbery in violation of 18 U.S.C. 1951 (a); and Count III brandishing, and discharging a firearm in furtherance of a crime of violence in violation of 18 U.S.C. 924 (c)(1)(A)(ii). [DE:19].

Mr. Hamilton and Mr. Alexander each entered a plea of not guilty to the charges and proceeded to trial before a jury on February 15, 2022. Pursuant to Fed.R.Cr.P. 29, Mr. Hamilton moved for a judgment of acquittal at the conclusion of the government's case, and at the conclusion of the submission of all evidence in the case. [DE:208-171].  Both motions were denied by the district court. [DE:208-184]. On February 24, 2022, the jury returned its verdict finding Mr. Hamilton and Mr. Alexander guilty of all charges. [DE:124, 125].

Mr. Hamilton timely filed post-trial motion to set aside verdict [DE:137], a motion for new trial [DE:139], and a supplemental motion for new trial [DE:150]. On May 5, 2022, the district court entered an order denying those motions. [DE:163]. However, in light of the United States Supreme Court decision in *United States v.*

*Taylor*, 142 S.Ct. 2015 (2022), the government moved for, and the district court granted an order dismissing Count III of the indictment. [DE:218].

Mr. Hamilton's sentencing hearing was held on May 31, 2023. At the conclusion of that hearing the district court sentenced Mr. Hamilton to 170 months concurrent terms of imprisonment as to Counts I and II, consecutive three-year terms of supervised release and a $200 special assessment. [DE:221,226]. Mr. Hamilton timely filed his notice of appeal, vesting jurisdiction in this Court. [ DE:223].

### Statement of Facts

Shortly after 10 AM on the morning of September 29, 2019, two masked individuals entered and attempted to rob the Grab A Snack convenience store located in the Liberty City area of Miami. A shootout ensued between the two masked perpetrators and an on-duty store clerk. After the exchange of gunfire, the masked perpetrators left the store and fled the area. One of them, having been hit during the shootout, left a trail of blood on the floor and leading out the door. None of the store employees or customers who were present were able to identify either of the masked individuals. Nor was their identity ascertainable from the store's video surveillance footage that captured the incident. At that point law enforcement only knew that the perpetrator who was shot was wearing a yellow hoodie type sweatshirt and that his accomplice was wearing a long-sleeved black top and dark colored pants with markings on the side.

3

Shortly after the attempted robbery, law-enforcement was alerted to and responded to a single vehicle crash at the corner of N.W. 71st St. and 2nd Court in Miami. That location is a little over a mile away from the Grab A Snack. [DE:205-109].

A responding City of Miami Police Department officer observed a dark colored Ford Explorer crashed into a building. The engine was still running, and the license tag was covered with a piece of cardboard. Another officer at the scene observed what he thought to be blood inside the vehicle. Photographs of the exterior and the interior of the vehicle were taken. [DE:206-52]. Department of Motor Vehicle records indicated that the Explorer was registered to Mr. Hamilton. [Gx16]. [DE:210-18]. The vehicle was then towed to the city of Miami impound lot. [DE:205-110-121].

Video surveillance recovered from a nearby business [Gx14A] showed that on September 29 at approximately 10:17 AM the Explorer was traveling eastbound and crashed on 71st St. A person dressed in black exits the driver's side of the vehicle and proceeds southbound on NW. 2nd Court. [DE:206-128-129].

A week after the Explorer was taken to the compound, a crime scene investigator took additional photographs, performed latent fingerprint processing and took samples of the suspected blood from the interior passenger side of the vehicle. [DE:206-60]. There were no fingerprints recovered from the cardboard

4

covering of the license plate. [DE:206-69]. A cell phone that had been previously found in the vehicle was not processed for fingerprints or DNA. None of the interior of the vehicle, including the steering wheel, paperwork in the glove box, contents of the cupholder, shift lever, or touchscreen were processed for DNA. Nor was the cardboard license plate cover. [DE:206-87-92].

Samples of the blood taken from the store, and the Explorer were retained and submitted for DNA analysis. [DE:208-85]. The government's DNA analysis expert opined that the blood sample from the store and the blood sample from the Explorer matched the DNA profile obtained from Mr. Alexander. [DE:208-117].[1]

A cell phone found in the crashed Explorer (# ending in 4136) was analyzed and found to be registered to Mr. Hamilton. A second phone seized from Mr. Alexander at the time of his arrest (# ending in 4116), was also analyzed. A forensic analysis of each of the phones was conducted. Phone records showed that on September 28, 2019, there were 11 voice connected calls between Mr. Alexander and Mr. Hamilton including one that lasted for 16-17 minutes. Additionally, the

---

[1] On October 8, 2019, a City of Miami Police Department crime scene investigator, accompanied by other law-enforcement officials interacted with Mr. Alexander while he was in custody. The investigator took five or six photos of an apparent bullet wound through the rear of his left and right thigh and right knee [Gx20A-G], and another law-enforcement official took a DNA swab. Mr. Alexander resisted during the entire process and had to be held down. [DE:207-235], [DE:208-29-30].

records showed that Mr. Alexander attempted to call Mr. Hamilton five times before 8:07 AM on September 29, 2019. [DE:208-68]. Analysis and data extraction of Mr. Alexander's phone yielded two photographs taken on September 1, 2018, of Mr. Alexander standing with Mr. Hamilton. Mr. Hamilton is depicted wearing black pants with markings that were similar to the pants worn by one of the masked perpetrators during the robbery.

FBI special agent Christopher Goodrich was qualified as an expert in the field of historical cellular record analysis. [DE:208-37-39]. Based on his analysis of call detail records pertaining to Mr. Hamilton and Mr. Alexander's phones, [Gx24,25,26 and 26A] he prepared a report [Gx. 29] plotting the approximate location of Mr. Hamilton's and Mr. Alexander's phone shortly prior to the time of the robbery. Agent Goodrich opined that the users of the two phones may have been together shortly before the time of the robbery and that between 9:46 AM and 9:53 AM they were within close proximity to the location of the robbery. [DE:208-62] [Gx.29]. However, the robbery occurred at a location in the middle of a triangle of three different cell towers, none of which hit on Mr. Hamilton's phone. That indicates that he was not within the area of the triangle and could have been at least three other possible locations shortly before the robbery.  [DE:208-74-75].

A City of Miami P.D. latent print examiner was qualified as an expert in the area of latent fingerprint analysis. [DE:134]. His analysis of the latent fingerprints

lifted from the exterior of the Explorer, matched known standards of Pearlie Scott, Lemon Benton and Mr. Alexander. In addition, a latent left palm print lifted from the vehicle matched a known standard of Mr. Alexander. [DE: 206-21]. There were no prints lifted from the vehicle matching standards from Mr. Hamilton. There were, however, other prints of value that could not be matched to a particular person. [DE:206-32,41].

Pearlie Scott was in a romantic relationship with Mr. Hamilton and shared a residence with him at 129 N.W. 70th St. as of the date of the robbery. That address is around the corner from where the explorer crashed. Although the Explorer was registered in Mr. Hamilton's name, and he made the monthly payments, he rarely drove it. His primary car was a black Chevrolet Impala. [DE:206-114-115].

When Ms. Scott woke up on September 29, she did not see either Mr. Hamilton or the Explorer and did not know where either was. When Mr. Hamilton came back to their residence, he said that he had been in an accident with the Explorer. He was wearing a long-sleeved jean jacket and jean pants, and appeared angry. He told her to report that the Explorer had been stolen and she did so. [DE:206-116-118]. She contacted the police and told them she had left the keys in the Explorer and that someone had driven off in it. [DE:206-120].

Ms. Scott recalled that Mr. Hamilton was not at the house when the police arrived to investigate. On the night of September 28, she had argued with Mr.

Hamilton about the Explorer. Following the argument, he took the vehicle and the next time she saw him was the following day when he returned home without it. [DE:207-12].

When she reported the vehicle theft, the police told her that it had been in an accident. She went to the scene of the crash which was a couple of blocks away from the residence. [DE:206-123-124]. After Ms. Scott went to the accident scene, she was informed that the Explorer had been involved in a robbery. She told the police I'm sorry, I made a mistake about the car being stolen and I don't want to be part of it. [DE:207-19].

Ms. Scott went to the Miami Police Department later that afternoon, was interviewed, and admitted to making a false police report regarding the theft of the Explorer. During the interview she was shown a Facebook profile photograph that she identified as Stutter. [Gx18A] [DE:207-20-24].[2]

Later on the evening of September 29, Hamilton contacted her, told her that he was sorry, that he was going to turn himself in, and that he was in Georgia. [DE:207-24-25].

---

[2] During her in court testimony, she identified Mr. Alexander who she knew as Stutter.

## STANDARDS OF REVIEW

This Court reviews a district court's jury instructions for an abuse of discretion. *United States v. Guerra*, 293 F.3d 1279, 1290 (11th Cir. 2002).

Where a timely objection is made to the prosecutor's burden shifting comments and comments on silence at trial, challenges to that conduct which generally involves mixed questions of law and fact are reviewed *de novo*. *United States v. Johnson*, 277 Fed.Appx. 890, 895 (11th Cir. 2008) citing *United States v. Noriega*, 117 F.3d 1206, 1218 (11th Cir. 1997).

A district court's decision not to grant a new trial or conduct a post-verdict evidentiary hearing based on juror issues is reviewed for an abuse of discretion. *United States v. Venske*, 296 F.3d 1284 (11th Cir. 2002).

A district court's application of the sentencing guidelines is reviewed *de novo* and its factual findings for clear error. *United States v. Matire*, 898 F.3d 1151, 1159 (11th Cir. 2018). Whether a sentence is substantively reasonable is reviewed for abuse of discretion. *United States v. Irey*, 612 F.3d 1160, 1188 (11th Cir. 2010)(en banc).

## SUMMARY OF THE ARGUMENTS

The district court erred in instructing the jury on Mr. Hamilton's alleged flight following the charged offense. The instruction was inappropriate, where there was an insufficient factual basis to show. Mr. Hamilton's alleged flight was based on his purported involvement in the charged offenses, as opposed to involvement in a different offense, or for other reasons.

Mr. Hamilton's convictions must be reversed based on the prosecutor's inappropriate comments made during the initial and final closing arguments. During the closing arguments, the prosecutor impermissibly commented on Mr. Hamilton's right, to remain silent and not testify at trial. In addition, the prosecutor presented arguments to the jury intended to shift the government's burden of proof on elements of the charged offense to Mr. Hamilton.

The district court erred in denying Mr. Hamilton's motion for new trial based on a juror's post-trial revelation he had not understood the law and believed Mr. Hamilton was not guilty. In the alternative, the district court erred in failing to conduct an interview of the juror who revealed that information given that that information indicated that Mr. Hamilton was convicted on less than a unanimous verdict.

The district court committed sentencing error by (1) imposing a 20 month upward departure from the calculated guidelines range without providing the parties with a notice of intent to depart required by Fed.R.Cr.P 32(h); and (2) there were no grounds to impose an above the guidelines sentence.

## ARGUMENTS AND CITATIONS OF AUTHORITY

### ISSUE I

THE DISTRICT COURT COMMITTED REVERSIBLE ERROR IN INSTRUCTING THE JURY ON MR. HAMILTON'S CONSCIOUSNESS OF GUILT BASED ON HIS ALLEGED FLIGHT FOLLOWING THE ROBBERY

During the trial, the government presented the testimony of Mr. Hamilton's longtime girlfriend Pearlie Scott concerning a conversation that occurred later on the day of September 29th. According to Ms. Scott, Mr. Hamilton contacted her and told her that he was sorry, and that he was going to turn himself in. Later he told her that he was in Georgia. [DE:207:24-25]. Based on this testimony, the government requested that the jury be given a flight instruction.

Over Mr. Hamilton's objection the district court instructed the jury that,

"Intentional flight by a person during or immediately after a crime has been committed, or after he is accused of a crime is not, of course, sufficient in itself, to establish the guilt of that person. But intentional flight under those circumstances is a fact, which, if proved, may be considered by the jury in light of all the other evidence in the case, in determining the guilt or innocence of that person. Whether or not the defendant's conduct constituted flight is exclusively for you as the jury to determine. And if you do so determine whether or not that flight showed a consciousness of guilt on his part, and the significance to be attached to that evidence are also matters exclusively for you, as a jury to determine. I remind you that in your conversation of any evidence of flight, if you should find that there was flight, you should also consider that there may be reasons for which are fully consistent with innocence. These may include fear of being apprehended, unwillingness to confront the police, or reluctance to confront the

witness. And may I suggest to you that a feeling of guilt does not necessarily reflect actual guilt of a crime which you are considering".

[DE:209 -78-79].

Knowing that this instruction was in the offing, the prosecutor, during his closing argument, told the jury that "I expect the judge will tell you that you are permitted to consider intentional flight immediately after a crime is consciousness of guilt. The law actually gives you permission to take the fact that somebody flees as evidence of their guilt. And I submit that in this case you absolutely should." [DE:209-21].

Historically courts have recognized that a person may leave a jurisdiction for any number of reasons. *See e.g.*, *Wong Sun v. United States*, 371 U.S. 471, 483 n.10 (1963) ("we have consistently doubted the probative value in criminal trials of evidence that the accused fled the scene of an actual or crime."). *Alberty v. United States*, 162 U.S. 499, 511 (1896)(… "it is a matter of common knowledge that men who are entirely innocent do sometimes flee from the scene of a crime  through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses."

This court has recognized that the probative value of flight as circumstantial evidence of guilt depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendants behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt, to consciousness of guilt

13

concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged. *United States v. Myers*, 550 F. 2d 1036, 1049 (5th Cir. 1977). Moreover, because of the inherent unreliability of evidence of flight and the danger of prejudice it's use may entail, a flight instruction is improper unless the evidence is sufficient to furnish reasonable support for all four of the necessary inferences. *United States v. Myers* at 1050 citing E. Cleary, McCormick on Evidence s 271, p. 655 (rev. ed. 1972). See also *United States v. Robinson,* 154 U.S. App.D.C. 265, 475 F.2d 376, 384 (1973) (observing that the "interest of justice is perhaps best served if this matter [flight] is reserved for counsel's argument, with little if any comment from the bench.").

In this case, the evidence at trial simply did not support the giving of a flight instruction. At the time he spoke with Pearlie Scott there was no evidence that law enforcement connected Mr. Hamilton to the robbery. There was however evidence that he was involved in another offense – the filing of a false police report of a vehicle theft/accident; and that Mr. Hamilton had previously been accused of filing a false theft/accident report and may have been on probation – See PSR ¶ 73. Those rather than the robbery may have prompted the flight.

14

## ISSUE II

MR. HAMILTON'S CONVICTIONS SHOULD BE REVERSED
BASED ON THE PROSECUTOR'S IMPERMISSIBLE COMMENTS
ON HIS SILENCE, AND BURDEN SHIFTING REMARKS MADE
DURING CLOSING ARGUMENT

During the government's initial closing argument the prosecutor
impermissibly commented on Mr. Hamilton's failure to testify arguing "what
possible explanation is there for telling Pearlie Scott to falsely report the car stolen
if Hamilton wasn't even involved? If it was really stolen, wouldn't it make sense for
Rodrick Hamilton to call the police himself, explain to them what happened? The
comment was immediately objected to. [DE:209-20]. Again, during the
government's rebuttal closing argument the prosecutor impermissibly commented
on Mr. Hamilton's right to remain silent and impermissibly attempted to shift the
government's burden of proof arguing "but even if we didn't call Pearlie Scott, as a
witness at all, there is still overwhelming, circumstantial evidence of Rodrick,
Hamilton's guilt. There's been no reasonable explanation offered for how the car got
out of his possession. There's no reasonable explanation for why his cell phone
would have been in the car if it wasn't for him." Defense counsel immediately
objected to these remarks. [DE:209-68].

It is clear that the Fifth Amendment to the United States Constitution confers
upon the accused an absolute right not to testify at his trial; and, of course, the jury

is simply not permitted to draw any inference from the accused's election not to testify. In light of this fundamental constitutional principle, it is equally clear that reversible error will exist in a criminal case if the prosecution comments on the fact that the accused did not testify. *See*, *Griffin v. United States*, 380 U.S. 609, 612 (1965); *United States v. LeQuire*, 943 F. 2d 1554, 1565 (11th Cir. 1991). Moreover, not only direct comments on a defendant's failure to testify implicate the Fifth Amendment. Even indirect comments on the failure can invalidate a conviction. *United States v. Bright*, 630 F. 2d 804, 825 (5th Cir. 1980).

In determining whether a prosecutor's remark impairs the integrity of the defendant's right to testify, the test is whether it can be shown that the remark was intended to comment on the defendant's silence, or was of such a character that a jury would naturally and necessarily construe it as a comment on the defendant's silence. *United States v. Stuart Caballero*, 686 F. 2d 890, 892 (11th Cir. 1982). Here, the prosecutor's comments satisfy both prongs of the test.

The first comment, "what possible explanation is there for telling Pearlie Scott to falsely report the car stolen if Hamilton wasn't even involved" is simply a direct comment on Mr. Hamilton's failure to testify. The comment, fairly read, tells the jury that Mr. Hamilton's failure to testify indicates that there was no explanation and that his failure to testify and provide one proves his involvement in the robbery. Even if this comment is construed as not being a direct comment, it's very nature

16

leads to the conclusion that a jury would have naturally and necessarily understood it as a comment on Mr. Hamilton's decision not to testify.

The comments made by the prosecutor during his rebuttal closing argument are equally offensive to Mr. Hamilton's Fifth Amendment right not to testify. The prosecutor's comment that, "but even if we didn't call Pearlie Scott as a witness at all, there is still overwhelming, circumstantial evidence of Roderick Hamilton's guilt. There's been no reasonable explanation offered for how the car got out of his possession. There's no reasonable explanation for why his cell phone would have been in the car if it wasn't for him," can fairly be construed as a direct comment on the right, not to testify or, alternatively, as a comment that the jury naturally and necessarily understood as such.

## Burden Shifting Arguments

The United States Supreme Court has made it clear that the Due Process Clause protects the accused against conviction except upon proof, beyond reasonable doubt of every fact necessary to constitute the crime with which he is charged. *In re Winship*, 397 U.S. 358, 364 (1970) and that the accused does not have to disprove anything, nor prove innocence and state created presumptions to the contrary, are violative of due process. *Sandstrom v. Montana*, 442 U.S. 510 (1979). In light of this precedent, this Court has acknowledged that a prosecutor's comments during trial may be so prejudicial as to impermissibly shift the burden of proof. *See*

17

*e.g., Duncan v. Stynchcombe*, 704 F. 2d 1213, 1216 (11th Cir. 1983); and that prosecutors must refrain from making burden shifting arguments which suggest that the defendant has an obligation to produce any evidence, or to prove innocence. *United States v. Simon*, 964 F. 2d 1082, 1087 (11th Cir. 1992), *United States v. Bernal-Benitez,* 594 F. 3d 1303, 1315 (11th Cir. 2010).

As we have explained, the prosecutor's comments implicated Mr. Hamilton's right not to testify. In addition, they impermissibly shifted the burden of proof by urging that it was his obligation to provide a reasonable explanation explaining the circumstances as to how the vehicle got out of his possession, and his cell phone was found in the vehicle. The comments were aimed directly at Mr. Hamilton and necessarily calculated to relieve the government of the burden of proving that Mr. Hamilton was in possession of the vehicle in connection with the robbery and the significance of his cell phone being found in the vehicle.

## ISSUE III

THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING MR. HAMILTON'S MOTION FOR NEW TRIAL OR ALTERNATIVELY FAILING TO CONDUCT AN INQUIRY OF A JUROR WHO POST VERDICT NOTIFIED THE COURT THAT HE HAD MISUNDERSTOOD THE COURT'S INSTRUCTIONS AND BELIEVED MR. HAMILTON WAS NOT GUILTY

The United States Supreme Court has unequivocally recognized that a defendant enjoys "constitutional right to demand that his liberty should not be taken

from him, except by the joint action of the court, and unanimous verdict of a jury of 12 persons." *Thompson v. Utah*, 170 U.S. 343, 351 (1898). *See also, Ramos v. Louisiana*, ___ U.S. ___, 140 S.Ct. 1390 (2020). Mr. Hamilton was denied that right in this case.

After the conclusion of the trial, one of the jurors returned his answer to a court questionnaire asking DO YOU HAVE ANY RECOMMENDATIONS AS TO HOW WE MAY IMPROVE OUR SERVICES? His answer was "yes, your honor it was not clearly explained about the unanimous voting of guilty, or not guilty. I thought we all had to agree, or deliberations would've continued. It was never explained about a hung jury if we all didn't agree. I truly felt Mr. Hamilton wasn't guilty. I don't know the law that well. However, I wish I would've stuck to my guns and allowed another jury to try him. My deepest apologies." The message conveyed by the juror is clear. He believed Mr. Hamilton was not guilty, and that he deserved the opportunity to have this case tried before a different jury. Based on the juror response, Mr. Hamilton moved for a new trial. [DE:150]. The district court denial of that motion was error. [DE: 163].

In *Pena-Rodriguez v. Colorado,* 580 U.S. 206 (2016) the Supreme Court recognized another exception to Fed.R.Evid. 606(b) traditional no impeachment rule barring inquiry into a verdict where there has been a threshold showing that racial stereotypes or animus were relied on to convict a defendant. Mr. Hamilton submits

that an additional exception should be recognized in this case, where a defendant stands convicted on what is later revealed to be a non-unanimous verdict.

In 2020, the Supreme Court decided *Ramos v. Louisiana,* ___U.S.___, 140 S.Ct. 1390 (2020). The Court's opinion in Ramos makes it abundantly clear that a less than unanimous verdict deprives a criminal defendant of his Sixth Amendment right to trial by an impartial jury and struck down two earlier Supreme Court decisions permitting non-unanimous verdicts based on Oregon and Louisiana state law. *See, Apodaca v. Oregon*, 406 U.S. 404 (1972) and *Johnson v. Louisiana,* 406 U.S. 356 (1972).

Now that *Ramos* has reaffirmed that the Sixth Amendment simply prohibits a non-unanimous verdict in a criminal case, a district court should now be permitted to inquire when it has received post-verdict information raising the specter of a Sixth Amendment violation. At a minimum this case should be remanded to the district court for the purposes of conducting an inquiry of the juror in question to determine the nature and extent of the Sixth Amendment violation in this case.

**ISSUE IV**

THE DISTRICT COURT'S 170-MONTH SENTENCE OF IMPRISONMENT IMPOSED ON MR. HAMILTON MUST BE VACATED WHERE: (A) THE TRIAL JUDGE FAILED TO PROVIDE THE REQUIRED NOTICE PURSUANT TO RULE 32(H) PRIOR TO IMPOSING A SENTENCE UPWARDLY DEPARTING FROM THE CALCULATED GUIDELINES RANGE; AND (B) THE

170 MONTHS SENTENCE WAS NOT AUTHORIZED AS A
DEPARTURE OR WAS SUBSTANTIVELY UNREASONABLE

The United States probation officer who prepared the Presentence
Investigation Report in this case calculated Mr. Hamilton's total offense level as 27.
Presentence Investigation Report (PSR) ¶ 27. The probation officer then determined
that Mr. Hamilton had 10 criminal history points, placing him in a criminal history
category of V. PSR ¶ 50. Based on a total offense level of 27 and a criminal history
category for V, Mr. Hamilton's advisory guideline range was calculated to be 120
months to 150 months. PSR ¶ 104. At the conclusion of Mr. Hamilton's sentencing
hearing the district court imposed a sentence of 170 months imprisonment, reflecting
a 20-month upward departure from the calculated guidelines range. The 20-month
upper departure was impermissible for the reason that the district court failed to
provide notice of its intent to upwardly depart as required by Fed.R.Cr.P. 32(h) and
in any event was not authorized by the guidelines, and or was substantively
unreasonable.

### (A) <u>Lack of Notice Required by Rule 32(h)</u>

Fed.R.Cr.P. 32(h) requires the court to provide notice to the parties if it
contemplates a "departure" from the applicable guideline sentencing range.
"Departure is a term of art under the Guidelines and refers only to non-Guidelines
sentences imposed under the framework sent out in the Guidelines." *Irizarry v.*

*United*, 553 U.S. 708, 714. The notice requirement therefore applies only when the district court imposes a departure authorized by 18 U.S.C. 3553(b). *Id*. It does not apply to a variance from guidelines ranges, that a district court may find justified under the sentencing factors set forth in 18 U.S.C. 3553(a) Id. at 715. *United States v. Plasencia*, 886 F.3d 1336, 1344-145 (11th Cir. 2018)("Notice, although necessary for a court to issue an upward departure, is not necessary for a court to issue an upward variance.") *United States v. Perez*, 806 Fed. Appx. 725,728 (11th Cir. 2020) (If the district court contemplates adjusting a guidelines sentence based on the factors identified by section 3553(b) (a "departure"), it must provide the parties notice. If the district court modifies a sentence using the factors in section 3553(a) (a variance), it need not provide notice to the parties). Mr. Hamilton's case the comments of the district court during the sentencing hearing indicated that it contemplated and applied a departure, not a variance.

To begin with, the trial judge relied on U.S.S.G. 4A1.3(a)(1) to justify the increased sentence. Section 4A1.3(a)(1) was originally a departure provision and provides in pertinent part that "if reliable information indicates that the defendant's criminal history category substantially under, represents the seriousness of the defendants, criminal history, or the likelihood that the defendant will commit other crimes, and upward departure may be warranted. The information may include information concerning the following: prior sentences not used in computing, the

criminal history, category, prior sentences of substantially more than one year imposed as a result of independent crimes committed on different occasions… [3]

During the sentencing hearing the trial judge made it quite clear that he was relying on the section 4A1.3(a), "So, let me be clear. So, for sentencing purposes, I am really placing great emphasis on paragraphs 44, 45, 46, 47, 48, (of the PSR) for which he received terms of imprisonment." "And so, I will direct my attention to the matters that are of concern to the court, which are those matters for which he was, in fact, convicted." [DE:232:20-21]. "So, the Court has to take a look at section 4A1.3(a)(1) of the Guidelines, which sets the parameters for the Court to consider." [DE:232:26]. Then, after quoting from the departure language of section 4A1.3(a)(1), The court added "Based on looking at the prior record, it really is a justifiable basis for departing above the guidelines. And, I have to say, I have been

---

[3] In the PSR the probation officer identified section 4A1.3(a)(1) as grounds for an upward departure rather than a variance. PSR ¶116 quoting section 4A1.3(a)(1).

doing this for over 30 years, and I could probably count on one hand the number of times I have departed above the guidelines." [4,5]

### (B) The 20 Month Sentence Increase Was Inappropriate

Regardless of whether the sentence increase is characterized as a departure or a variance, it was inappropriate. The PSR accurately calculated Mr. Hamilton's final offense level and criminal history category that yielded guideline range of 120 to 150 months. The factors taken into consideration by the court at sentencing were, as counsel pointed out at sentencing already taken into consideration in the calculation guideline range, and Mr. Hamilton's calculated criminal history fairly reflected his prior conduct. No sentence increase was, therefore, justified.

---

[4] Mr. Hamilton's counsel also understood that the above the guidelines sentence being considered by the court, was based on a departure. "Now, I do understand that there is a departure provision that allows for the court to account for the concerns it has expressed." [DE:232:23]. We object to the upward, your Honor. [DE:232:30].

[5] At other points during the hearing the court used the term variance [DE:232:28], but it is clear that the upper adjustment in the sentence was based on section 4A1.3(a)(1) which, as we have noted, is a departure provision.

## CONCLUSION

Based on the foregoing arguments and citations of authority, it is respectfully submitted that this Court should vacate Mr. Hamilton's convictions and remand this case for a new trial, or in the alternative, to conduct an inquiry of the subject juror.

Respectfully submitted,

By: /s/ David A. Howard
David A. Howard, P.A.
Attorney for Appellant
25 S.E. 2nd Avenue, Suite 1105
Miami, Florida 33131
Telephone No. (786) 360-6056
Facsimile No. (305) 536-2170

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(a)(7), I hereby certify that the foregoing Initial Brief and the numbered pages contains <u>5399</u> words and complies with the typeface and type-style requirement and was prepared using the Word program and Times New Roman 14-point font.

By: <u>*/s/ David A. Howard*</u>
David A. Howard

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed via CM/ECF with the Clerk of Court on this <u>1st</u> day of February, 2024, and electronic copies thereof served upon all counsel of record.

By: <u>*/s/ David A. Howard*</u>
David A. Howard